# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| JETPAY MERCHANT SERVICES, LLC, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § No. 3:13-CV-0401-M |
| | § |
| CHARTIS SPECIALTY INSURANCE | § |
| COMPANY, and ROYAL GROUP | § |
| SERVICES, LLC, | § |
| | § |
| Defendants. | § |

## MEMORANDUM OPINION & ORDER

Before the Court is the Motion to Transfer to the Southern District of New York, filed by Defendant Chartis Specialty Insurance Company ("Chartis") [Docket Entry #22], and joined by Defendant Royal Group Services, LLC ("RGS") [Docket Entry #34]. For the reasons set forth below, and at the hearing held on June 18, 2013, the Motion is **DENIED**.

## I.     BACKGROUND

JetPay Merchant Services, LLC ("JetPay") is a credit and debit card processor. It has its principal place of business in the Northern District of Texas, where it is also incorporated. JetPay approached RGS,[1] a Michigan-based surplus lines insurance agency, about procuring an indemnity policy to insure it against uncollectible chargebacks.[2] RGS recommended Chartis, an Illinois corporation with its principal place of business in the Southern District of New York, as

---

[1] JetPay claims that it approached RGS in March of 2010, whereas RGS claims this occurred in or around February 2011. This difference is immaterial to the subject Motion.

[2] A chargeback occurs when an online merchant fails to deliver purchased merchandise to consumers. The bank card processor, here JetPay, must compensate those consumers. Although the processor can typically collect that amount from the merchant, a chargeback becomes uncollectible when the merchant goes out of business before compensating the bank card processor.

an insurance provider.³  Chartis then issued a Binder and Policy, effective from June 20, 2011 to June 20, 2012.

On November 14, 2011, one of JetPay's merchants, Pacific Sports, went out of business, leaving JetPay with uncollectible chargebacks exceeding $1.8 million.  RGS, on JetPay's behalf, submitted a claim to Chartis for the loss.  Christine Flammer, then a Chartis claims analyst, denied the claim, asserting that the Pacific Sports chargebacks were not covered because JetPay had not obtained pre-approval from Chartis for Pacific Sports, as allegedly required by the Binder and Policy.

As a result of the denial, JetPay sued RGS and Chartis for misrepresenting the Binder and Policy, breach of their contract, and violations of Chapter 541 of the Texas Insurance Code. JetPay also sued RGS for failing to procure adequate insurance for it.  Chartis moved to transfer the action to the Southern District of New York under 28 U.S.C. § 1404(a), and RGS joined in the Motion.  The Court held a hearing on June 18, 2013.

## II.   DISCUSSION

Under 28 U.S.C. § 1404(a), the Court may, in the interest of justice and for the convenience of the parties and witnesses, "transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  An action can be brought in any district where venue is proper under 28 U.S.C. § 1391(b).

A.   Venue

(1)   Section 1391(b)(1)

Under § 1391(b)(1), venue is proper in "a judicial district in which any defendant resides,

---

³ On JetPay's behalf, Gregory Richmond ("Richmond"), a principal at RGS, and other RGS employees negotiated the Uncollectible Chargeback Insurance ("Binder") and the specimen generic base policy ("Policy") at Chartis's office in the Southern District of New York.

if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). An out-of-state corporation is subject to personal jurisdiction in New York if the corporation conducts business, or is authorized to conduct business there. N.Y. Bus. Corp. Law § 1314. Although Chartis is incorporated in Illinois, its principal place of business is in the Southern District of New York. Accordingly, for venue purposes, Chartis is a resident of the Southern District of New York. RGS, a Michigan-based company, is a resident of the Southern District of New York as well because it is authorized by the New York Department of State to conduct business within the state. Because both defendants are residents of the Southern District of New York, venue is proper there. *See* 28 U.S.C. § 1391(b)(1).

    (2)    Section 1391(b)(2)

A case may also be brought in a judicial district in which a "substantial part" of the events giving rise to the dispute occurred. 28 U.S.C. § 1391(b)(2). This subsection requires only that the contacts with the district be substantial, not that "the most relevant events took place" there. *Emelike v. L-3 Commc'ns Corp.*, No. 3:12-CV-2470, 2013 WL 1890289, at *3 (N.D. Tex. May 7, 2013) (Lynn, J.); *see Becker v. DPC Acquisition Corp.*, No. 00 CIV 1035 WK, 2001 WL 246385, at *3 (S.D.N.Y. Mar. 13, 2001). Here, the Binder and Policy were negotiated in, and issued from, the Southern District of New York. Chartis also received, processed, and made the decision to deny JetPay's claim in the Southern District of New York. This amounts to "a substantial part of the events" underlying this lawsuit, and establishes proper venue under § 1391(b)(2) as well. *See* 28 U.S.C. § 1391(b)(2).

Venue is also proper under § 1391(b)(2) in the Northern District of Texas, from which JetPay requested RGS's assistance in procuring surplus lines insurance and submitted its claim, and to which Chartis issued the Binder and Policy and, ultimately, its denial of the claim. These

actions, too, constitute a "substantial part of the events" giving rise to the action. *See* 17-110 Moore's Federal Practice - Civil § 110.04 (collecting cases following a trend to liberally construe the "substantial part of the events" test).

B.     Section 1404(a) Transfer

Because the Southern District of New York is a proper venue, the Court may transfer the action there under § 1404(a) if, and only if, Chartis demonstrates that it is a "clearly more convenient" venue than the Northern District of Texas. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). In making this determination, courts are to consider a number of private and public factors. The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"); *see also Volkswagen II*, 545 F.3d at 315.

The first private factor is neutral. Neither party has demonstrated that the quantity of documents or other proof available in one forum significantly outweighs the quantity in the other. The second private factor—the availability of compulsory process—favors transfer because two potential witnesses, Christine Flammer and Charles Orlowicz, are subject to the compulsory process of the Southern District of New York, but not of this Court. Nevertheless, their testimony may be taken by deposition, if necessary. The cost of attendance for witnesses, the third private factor, also leans in favor of transfer because Michigan, where RGS's witnesses are located, is significantly closer to the Southern District of New York than the Northern District of Texas. *See Volkswagen I*, 371 F.3d at 203–4. The parties agree that the fourth factor

is neutral.

The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the familiarity of the forum with the law that will govern the case; (3) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law; and (4) the local interest in having localized interests decided at home. *Volkswagen II*, 545 F.3d at 315; *Volkswagen I*, 371 F.3d at 203.

The first public factor weighs against transfer. "[W]hen considering th[e] [first] factor, 'the real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.'" *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, No. 3:10-CV-2466-D, 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011) (Fitzwater, C.J.) (quoting *In re Genetech, Inc.,* 566 F.3d 1338, 1347 (Fed. Cir. 2009)). The median time from filing to disposition is 38.5 months in the Southern District of New York, almost six times the 6.6 month median in the Northern District of Texas.[4]

As for the second and third public factor, this case presents a potentially complex choice of law analysis. JetPay asserts both common law and Texas statutory causes of action. The statutory claim is governed by Texas law. However, the Court notes, without deciding, that the common law causes of action may arise under Michigan, New York, or Texas law. The parties disagree significantly on this point. Should New York law govern the common law claims, this factor would favor transfer, but not so strongly as to tip the scales of the entire balancing test. Indeed, because JetPay filed in Texas, the Southern District of New York would have to apply Texas's choice of law rules, a complication which, assuming the states' choice of law rules conflict, weighs against transfer. *See Ferens v. John Deere Co.*, 494 U.S. 516, 524–25 (1990)

---

[4] Judicial Business of the United States Courts, Annual Report (2011), 156–57.

(superseded by statute on other grounds); *Yelton v. PHI, Inc.*, 669 F.3d 577, 580 (5th Cir. 2012) *cert. denied*, 133 S. Ct. 191 (2012) (holding that transferee courts apply the choice of law rules of transferor courts).  *See also Hem v. Toyota Motor Corp.*, No. 2:07-CV-079-CE, 2009 WL 2591374 (E.D. Tex. Aug. 20, 2009) (complex choice of law issues counsel against transferring an action out of state).

The remaining public interest factor—the preference for resolving localized disputes locally—militates strongly against transfer.  Texas Insurance Code § 981.004 authorizes surplus lines insurers to provide surplus lines insurance in Texas only if the insurance is placed through a surplus lines agent.  Tex. Ins. Code § 981.004.  A surplus lines agent cannot issue or cause to be issued an insurance contract with an eligible surplus lines insurer unless the agent possesses a surplus lines license issued by the Texas Department of Insurance.  Tex. Ins. Code § 981.202.  After the hearing, RGS submitted the declaration of one of its principals, Richmond, confirming that, due to an "administrative error," he had not registered with the Texas Department of Insurance as a surplus lines agent when Chartis issued a surplus lines insurance policy to JetPay in Texas.  Neither RGS, Chartis, nor any other person or entity involved with issuing JetPay's Binder and Policy had registered with the Texas Department of Insurance as a surplus lines agent.  The parties thus agree that at the time Chartis issued its policy to JetPay, it did so with an agent who did not meet the state's licensing requirements.

Texas has a strong policy in favor of maintaining jurisdiction over actions involving unauthorized insurers doing business in the state.  Texas Insurance Code § 101.001 provides:

> (a) It is a state concern that many residents of this state hold insurance policies issued by persons or insurers who are not authorized to do insurance business in this state and who are not qualified as eligible surplus lines insurers under Chapter 981. These residents face often insurmountable obstacles in asserting legal rights under the policies in foreign forums under unfamiliar laws and rules of practice.

* * *

(c) The purpose of this chapter is to subject certain insurers and persons to the jurisdiction of . . . (2) the courts of this state in suits by or on behalf of the state or an insured or beneficiary under an insurance contract.

Tex. Ins. Code § 101.001.  Because of Texas's strong stated interest in resolving this dispute in Texas, the final factor weighs heavily against transfer.

### III.   CONCLUSION

Chartis has not carried its burden of demonstrating that the Southern District of New York is a "clearly more convenient" forum than the Northern District of Texas.  *See Volkswagen II*, 545 F.3d at 315.  Those factors that favor New York do not clearly outweigh those that favor Texas, especially given Texas's strong interest in retaining actions involving unauthorized insurance issued in the state.  Thus, the Motion to Transfer is **DENIED**.

**SO ORDERED**.

July 8, 2013.

*[signature]*
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**